UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| FELIX L. CUEVAS and MARILYNE CARRION, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) C.A. No. 11-10869-WGY ) |
| PAUL DiPAULO, ET AL., | ) ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

YOUNG, D.J.

On May 11, 2011, Plaintiff Felix L. Cuevas ("Cuevas"), a prisoner in custody at the Souza Baranowski Correctional Center ("SBCC") in Shirley, Massachusetts, and Co-Plaintiff Marilyne Carrion ("Carrion"), a prisoner in custody at the Framingham State Prison ("FSP") in Framingham, Massachusetts, filed a handwritten Complaint pursuant to 42 U.S.C. § 1983 against a number of state prison officials and prison guards.[1]

First, Cuevas asserts a whole host of grievances concerning his conditions of confinement at SBCC, including the denial of access to the library and to counsel, harassment, mail tampering, and retaliation by prison guards.[2] Specifically, Cuevas alleges that on or about May 6, 2011, and earlier in October, 2010, he was placed in segregation and denied access to the

---

[1] The Defendants include: (1) Paul Dipolo, Deputy Commissioner of the Department of Correction ("DOC"); (2) Thomas Dickhaut, SBCC Superintendent; (3) Inner Perimeter Security ("IPS") guard Morales; (4) IPS guard Joe Ayala; (5) Correctional Officer ("CO") Way; (6) CO Jurado Ortiz; (7) CO Silvester; (8) Anthony Mendonsa, Deputy Superintendent of SBCC; (9) CO Hillis; (10) CO Burrios; (11) John Doe, FSP Superintendent; (12) IPS Melendez; and (13) IPS Cruz.

[2] On May 16, 2011, Cuevas filed another civil action presenting the same arguments, including additional factual allegations. In that action, his girlfriend is also a Co-Plaintiff. She asserts separate harassment claims. See Cuevas v. Dickhaut, et al., C.A. 11-10884-WGY.

Courts and attorneys by all the Defendants. He also claims his phone number access pin number has been deliberately deactivated to prevent him from contacting his attorneys.[3] Cuevas further contends that his outgoing mail has been intercepted, and his lawsuits have been destroyed by IPS guard Morales and Ayala. He claims that he has received information that these two IPS guards have ordered other prisoners to initiate attacks on prisoners that are on the so-called "shit list." Compl. at ¶ 9. As an additional matter, Cuevas claims he has evidence from incident reports that IPS guards Ayala, Melendez, and Morales have provided false testimony against him to implicate him (in unspecified matters). He asserts he is being harassed for filing this lawsuit and other lawsuits against SBCC Defendants. Next, he asserts that he is being denied access to the law library and typewriters, hindering his ability to prosecute this action. Further, he contends that he has been directly threatened with segregation and bodily harm by the IPS guards, and that IPS guards Ayala, Morales, Cruz and Melendez have harassed his family by attempting to persuade them that Cuevas is making threats against them (by phone). Finally, he claims his right to submit administrative grievances has been suspended and therefore he is unable to exhaust prison remedies before filing suit.

With respect to Co-Plaintiff Carrion, the only allegation contained in the Complaint is that she is being harassed and threatened on a regular basis.

The Plaintiffs seek an emergency hearing for a Temporary Restraining Order as well as an Order to the DOC to produce their personal accounts to prove their indigency and inability to pay the filing fees for this action.

---

[3]Cuevas is a frequent filer in this Court. Several of his allegations concerning his conditions of confinement have been raised or referenced in other civil litigation.

DISCUSSION

I.     The Filing Fee; Apportionment of the Filing Fee Between Plaintiffs

A party bringing a civil action must either (1) pay the $350.00 filing fee, see 28 U.S.C. § 1914(a); or (2) seek leave to proceed without prepayment of the filing fee, see 28 U.S.C. § 1915 (proceedings *in forma pauperis*). Where, as here, Cuevas and Carrion are prisoners as defined by 28 U.S.C. § 1915(h), a motion for waiver of prepayment of the filing fee must be accompanied by "a certified copy of the trust fund account statement (or institutional equivalent) for the prisoner for the 6-month period immediately preceding the filing of the complaint . . . obtained from the appropriate official of each prison at which the prisoner is or was confined." 28 U.S.C. § 1915(a)(2).[4]

Where there are multiple plaintiffs in a civil action (as here) it has been the practice of this Court to apportion equally the filing fee between or among all plaintiffs (both in prisoner and non-prisoner cases). See, e.g., Anderson, et.al., v. The Fall River Housing Authority, et al., C.A. 07-10131-GAO; Wickers, et al. v. Sheriff Cousins, et al., C.A. 05-10172-RCL; Gordon v. Maloney, C.A. No. 03-10205-DPW; Matthews v. Allen, C.A. No. 02-11922-RWZ. See also 28 U.S.C. § 1914(a) and (b) (providing for a $350 filing fee for civil actions and providing that the clerk shall collect additional fees only as are prescribed by the Judicial Conference of the United

---

[4]Unlike other civil litigants, prisoner plaintiffs are not entitled to a complete waiver of the $350.00 filing fee, notwithstanding the grant of *in forma pauperis* status. Based on the information contained in the prison account statements, the Court will direct the appropriate prison official to withdraw an initial partial payment from the plaintiffs' accounts, followed by payments on a monthly basis until the entire each has paid the proportionate share of the $350.00 filing fee. See 28 U.S.C. § 1915(b)(1)-(2). Even if the action is dismissed upon a preliminary screening, see 28 U.S.C. §§ 1915(e)(2), 1915A, plaintiffs remains obligated to pay the fee, see McGore v. Wrigglesworth, 114 F.3d 601, 607 (6th Cir. 1997) (§ 1915(b)(1) compels the payment of the fee at the moment the complaint is filed).

States).

Here, Cuevas and Carrion have failed to pay the filing fee or file applications for waivers thereof, but recognize the obligation to do so by requesting an Order for the prisons to provide their account statements.

Accordingly, within 21 days of this Procedural Order, Cuevas and Carrion shall each pay $175.00 (the apportioned share of the filing fee) or they shall file separate applications to proceed *in forma pauperis* accompanied by a <u>certified</u> prison account statement for the six-months preceding the filing of this action. Failure of the plaintiffs to comply with this directive may result in the dismissal of this action in whole or part. The Clerk shall provide plaintiffs with the standard form Applications to Proceed in District Court Without Prepaying Fees or Costs.

The Court will not issue an Order directing SBCC and FSP to provide the prison account statements to Plaintiff; however, the Clerk shall send a copy of this Memorandum and Order to the Treasurer's Office at SBCC and FSP in order to facilitate any request made by the Plaintiffs for their certified prison account statement. The Court requests that the Treasurer's Office at both SBCC and FSP include in the prison account statements the Plaintiffs' average monthly deposits for the six-month period preceding the date the Complaint was filed, as well as the average monthly balance for that same period.

No summonses shall issue pending compliance with the directives contained in this Memorandum and Order. If and/or when the filing fee issues are resolved, a further Order shall issue.

II.     <u>The Complaint is Subject to Screening</u>

Although Cuevas and Carrion are not proceeding *in forma pauperis* at this time, the

4

Court may screen this action pursuant to 28 U.S.C. § 1915A. Section 1915A authorizes the Court to review prisoner complaints in civil actions in which a prisoner seeks redress from a governmental entity, or officers or employees of a governmental entity, and to dismiss the action regardless of whether or not the plaintiff has paid the filing fee, if the complaint lacks an arguable basis in law or fact, fails to state a claim, or seeks relief from a defendant immune from such relief. 28 U.S.C. § 1915A.

In connection with this review, the Complaint is construed generously because Cuevas and Carrion are proceeding *pro se*. Hughes v. Rowe, 449 U.S. 5, 9 (1980); Haines v. Kerner, 404 U.S. 519, 520 (1972); Instituto de Educacion Universal Corp. v. U.S. Dept. of Education, 209 F.3d 18, 23 (1st Cir. 2000). Even under a broad reading, however, the Complaint presents a number of legal impediments subjecting this action to dismissal in whole or part for the reasons set forth below.

III. Failure to Plead Plausible Claims Under Fed. R. Civ. P. 8 and other Legal Impediments

Rule 8(a) requires a plaintiff to include in a complaint, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This statement must "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (alteration in original) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)); see Rivera v. Rhode Island, 402 F.3d 27, 33 (1st Cir. 2005). It must afford the defendant(s) a "[']meaningful opportunity to mount a defense.'" Díaz-Rivera v. Rivera-Rodríguez, 377 F.3d 119, 123 (1st Cir. 2004) (quoting Rodriguez v. Doral Mortgage Corp., 57 F.3d 1168, 1172 (1st Cir. 1995)); see Redondo-Borges v. U.S. Dept. of Housing and Urban Dev., 421 F.3d 1, 5 (1st Cir. 2005). "In a civil rights action as

5

in any other action . . . , the complaint should at least set forth minimal facts as to who did what to whom, when, where, and why." Educadores Puertorriqueños en Acción v. Hernández, 367 F.3d 61, 68 (1st Cir. 2004). Although "the requirements of Rule 8(a)(2) are minimal . . .[,] 'minimal requirements are not tantamount to nonexistent requirements.'" Id. (quoting Gooley v. Mobil Oil Corp., 851 F.2d 513, 514 (1st Cir. 1988)).

Here, the Complaint essentially sets forth a laundry list of grievances concerning Cuevas's conditions of confinement, along with bald assertions and legal conclusions regarding harassment, retaliation, mail tampering, and other matters. Cuevas, however, does not clearly set forth the claims so as to provide the Defendants a meaningful opportunity to file a response because the claims do not contain the "who, what, when, where, and why" type information necessary to state a claim against each of the Defendants. Moreover, the Complaint is deficient because Cuevas lumps all the Defendants together without providing sufficient notice as to the actions or inactions of each Defendant separately, that form the basis for alleged liability. Even if this Court were to consider that Cuevas has pled sufficiently his retaliation claims against the named IPS guards Ayala, Morales, Cruz and Melendez (which it does not at this time), the Complaint still fails to assert any basis for liability of the supervisory Defendants (not specifically mentioned in the body of the Complaint) or any other guards named as parties.

By pleading in the manner he has – collectively asserting his claims against the Defendants – Cuevas has failed to meet the pleading requirements for proceeding in this Court. See Bagheri v. Galligan, 160 Fed. Appx. 4, 5, 2005 WL 3536555, *1 (1st Cir. 2005) (unpublished decision, finding complaint deficient because, *inter alia*, it failed to state clearly which defendant or defendants committed each of the alleged wrongful acts; "[the district court's

requirement of an amended complaint] to remedy this deficiency did not demand more than the minimum necessary to satisfy notice pleading standards."). See also Atuahene v. City of Hartford, 10 Fed. Appx. 33, *34, 2001 WL 604902, *1 (2nd Cir. 2001) (unpublished decision, stating "[b]y lumping all the defendants together in each claim and providing no factual basis to distinguish their conduct, [plaintiff's] complaint failed to satisfy this minimum standard....") . Further, to the extent that Cuevas seeks to impose liability on DOC officials (Superintendents), the claims fail because there is no *respondeat superior* liability under 42 U.S.C. § 1983, and Cuevas has not set forth any basis for direct liability against the supervisory officials.[5]

As an additional matter, Cuevas's allegations of lack of access to the Courts (*i.e.*, lack of library access, access to counsel, and lack of typewriter) do not, as pled, state any plausible claim upon which relief may be granted. The general framework for analyzing access to court claims brought by inmates is set forth in Lewis v. Casey, 518 U.S. 343 (1996). In Lewis, the Supreme Court explained and narrowed its earlier holding in Bounds v. Smith, 430 U.S. 817 (1977) that "the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." Bounds, 430 U.S.

---

[5]"It is well-established that 'only those individuals who participated in the conduct that deprived the plaintiff of his rights can be held liable'" under § 1983. Velez-Rivera v. Agosto-Alicea, 437 F.3d 145, 156 (1st Cir. 2006) (quoting Cepero-Rivera v. Fagundo, 414 F.3d 124, 129 (1st Cir. 2005)). In civil rights actions, "supervisors are not automatically liable for the misconduct of those under their command. A plaintiff must show an affirmative link between the subordinate [employee] and the supervisor, whether through direct participation or through conduct that amounts to condonation or tacit authorization." Id. at 156 (quoting Carmona v. Toledo, 215 F.3d 124, 132 (1st Cir. 2000)). See Pinto v. Nettleship, 737 F.2d 130, 132 (1st Cir. 1984) (liability can only be imposed upon officials who were involved personally in the deprivation of constitutional rights).

at 828. The Supreme Court held that inmates are only guaranteed "a right of access to the courts." Lewis, 518 U.S. at 350. Prison officials are not constitutionally required to ensure that inmates enjoy every convenience in obtaining access to the courts, only "that they be able to present their grievances to the courts." Id. at 360. In order to establish a violation of the "right of access," a plaintiff must allege "actual injury." See id. at 349. "Actual injury" derives from the doctrine of standing and requires a prisoner to demonstrate that any alleged shortcomings in a legal library or assistance program hindered his efforts to pursue a legal claim involving direct or collateral attacks on sentences or challenges to conditions of confinement. Id. at 349, 354-355. Any impairment of any other litigating capacity is an "incidental (and perfectly constitutional) consequence[] of conviction and incarceration." Id. at 355. Here, Cuevas alleges he is hindered in pursuing this action , but does not allege sufficient facts to support a claim of "actual injury" sufficient to have constitutional implications.

Similarly, Cuevas's claims against IPS prison guards with respect to alleged false incident reports against him do not have constitutional implications. In connection with allegations of false charges lodged against an inmate, this Court has previously held that so long as the inmate has a hearing on charges, due process is satisfied, <u>unless the hearing itself is defective</u>, such that the prisoner is denied the opportunity to defend himself. As this Court has noted:

> [P]rison inmates have "no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest." Freeman v. Rideout, 808 F.2d 949, 951 (2 Cir., 1986), *cert. denied*, 485 U.S. 982, 108 S.Ct. 1273, 99 L.Ed.2d 484 (1988). *Accord* Hanrahan v. Lane, 747 F.2d 1137, 1139-40 (7 Cir., 1984). The constitutional corrective for such things is the subsequent hearing that the inmate receives on those charges....As long as the hearing itself provides the minimum due process protections as set forth in Wolff v. McDonnell, 418 U.S. 539, 94 S.Ct. 2963, 41

> L.Ed.2d 935 (1974), and the prisoner has the opportunity to present and rebut witnesses, then the prisoner has effectively been accorded his constitutional due. See, e.g., Hanrahan, 747 F.2d at 1139-40.

Orwat v. Maloney, 360 F. Supp. 2d 146, 157, 162 (D. Mass. 2005). The Court's review of a prisoner's challenge to the due process deficiencies in a disciplinary hearing is thus "limited to whether Wolff's minimum protections were met, and whether the written record provided by the fact finder presents "some evidence" to support the findings made in the disciplinary hearing." Id. (citations omitted). Here, Cuevas's Complaint is silent as to any due process deficiencies in any disciplinary hearing arising out of the alleged false incident reports.

Finally, with respect to the claims of Carrion, there is nothing whatsoever in the Complaint to state plausible claims against any Defendant. All that is baldly alleged is that she suffers harassment on a daily basis. There is no "who, what, when, where and why" type information included to state any claim upon which relief may be granted, and again, there is no liability imposed by the FSP Superintendent on a *respondeat superior* basis.

In light of the above, the Complaint is subject to dismissal in its entirety.

IV.     Cuevas May Not Represent Co-Plaintiff Carrion *Pro Se*

Although 28 U.S.C.§ 1654 permits persons to proceed *pro se*, this provision does not allow unlicenced lay people to represent other *pro se* litigants. See Feliciano v. DuBois, 846 F. Supp. 1033, 1039 (D. Mass. 1994); Eagle Assocs. v. Bank of Montreal, 926 F.2d 1305, 1308 (2d Cir. 1991). Additionally, this Court's Local Rules do not provide such authorization. See District of Massachusetts Local Rule 83.5.3(c), providing that "[a] person who is not a member of the bar of this court, and to whom sections (a) and (b) are not applicable, will be allowed to appear and practice before the court only in his own behalf." Id.

9

Although Carrion has signed the Complaint, it appears to this Court that Cuevas seeks to carry the laboring oar in prosecuting this action, as he has done previously in unrelated prisoner litigation.

The parties are hereby advised that each Plaintiff may only litigate his or her claims, and may not prosecute the claims of the other; this Court will not entertain requests for relief where the pleading is not signed by the party seeking the relief. Joint motions or pleadings signed by both Cuevas and Carrion are permitted; however, Cuevas may not prosecute claims of Carrion, and vice-versa, nor may one party appear at a conference or hearing (telephonically, by video-conference, or otherwise) for the other. The fact that Cuevas is imprisoned in one facility and Carrion is in another, does not alter the Court's view that each Plaintiff may only assert his or her own claims.

The parties are advised that failure to comply with this directive may result in the imposition of sanctions.

As a final note, the Court questions whether Carrion has or will continue to have a *bona fide* intent to prosecute this action *pro se*, given the above ruling. Should Carrion seek to continue in this action by filing a Motion for Leave to Proceed *in forma pauperis*, the Court will consider the filing to constitute a representation to the Court that she does, in fact, intend to pursue this action in good faith.

V.      The Request for a Hearing on a Temporary Restraining Order

In the body of the Complaint, Cuevas and Carrion seek generalized emergency relief in the form a Temporary Restraining Order or hearing for such relief. No separate motion for relief was filed pursuant to Rule 65 of the Federal Rules of Civil Procedure.

To obtain the extraordinary remedy of preliminary injunctive relief, Cuevas and Carrion must show that: (1) they will suffer irreparable harm absent an injunction; (2) the injury outweighs the harm to the defendants if granted; (3) they are likely to succeed on the merits of the case, and (4) the injunction does not adversely affect the public interest. Planned Parenthood League of Mass. v. Bellotti, 641 F.2d 1006, 1009 (1st Cir. 1981); see Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Bishop, 839 F. Supp. 68, 70 (D. Me. 1993) (extending four part preliminary injunction test to temporary restraining orders). To warrant the more extraordinary relief of a temporary restraining order, Cuevas and Carrion must demonstrate that their injury or loss is "immediate and irreparable." Fed. R. Civ. P. 65(b).

As an initial matter, Cuevas and Carrion have not certified their efforts to give notice to the adverse parties regarding their request for immediate injunctive relief. Additionally, Cuevas and Carrion have not shown that they have exhausted administrative remedies with respect to requested temporary injunctive relief, or that exhaustion was impossible. Further, Cuevas and Carrion have not satisfied the filing fee requirements of this Court and therefore are not entitled to any relief until the filing fee issues are resolved.

More importantly, however, this Court cannot find, based on the allegations contained in the Complaint -- which contains a number of deficiencies as discussed above -- that they are entitled to temporary injunctive relief under Rule 65 of the Federal Rules of Civil Procedure, on an *ex parte* basis, nor does this Court find that an emergency hearing on the matter is warranted, based on the bald allegations and legal conclusions presented. Rather, the Court considers that the record would need to be developed further before this Court can assess the merits of Plaintiffs' claims. It would be unfair, however, to require the Defendants to provide an

11

expedited response to the allegations in the Complaint in its current form (thereby, in some respects, permitting Cuevas and Carrion to circumvent the standard notice requirements of Rule 4 of the Federal Rules of Civil Procedure with respect to proper service of process).  Without the benefit of a response from the Defendants, the Court cannot find that Plaintiffs have shown a likelihood of success on the merits, nor shown that the harm to the Defendants would not outweigh the harm to him should injunctive relief be granted.  Further, the Court cannot find that Plaintiffs have shown that granting the relief requested would not adversely effect the public interest.  For all of these reasons, the Court declines to grant *ex parte* relief in any form, nor hold an emergency hearing in this regard.  Plaintiffs may seek injunctive relief after a responsive pleading has been filed by the Defendants, if this case is permitted to proceed further.

Accordingly, to the extent Plaintiffs' seek an Emergency Hearing on a Request for a Temporary Restraining Order (as contained in the Complaint), the request is <u>DENIED</u>.  Further, as noted above, to the extent Plaintiffs seek an Order compelling production of their prison account statements, the request is <u>DENIED</u> notwithstanding that the Treasurer's Offices at SBCC and FSP are requested to provide Plaintiffs with their inmate account statements.

VI.	<u>Order to Show Cause and Amend Complaint</u>

In light of all of the above, this action will be dismissed within forty-two (42) days from the date of this Memorandum and Order unless Plaintiffs demonstrates good cause in writing why this action should not be dismissed.  Additionally, within that 42 day period, Plaintiffs shall file an Amended Complaint curing the deficiencies noted herein.

The Show Cause Response shall <u>not</u> reiterate the claims made in the original Complaint, but should address specifically the legal impediments discussed herein (*i.e*., the Rule 8 pleading

deficiencies and the lack of *respondeat superior* liability under § 1983). Any Show Cause Response shall be limited to five (5) double-spaced pages.

With respect to the Amended Complaint, Plaintiffs shall set forth plausible claims against each Defendant <u>separately</u> in accordance with Rule 8, taking into account the various legal deficiencies noted in this Memorandum and Order, and setting forth, as to each Defendant, the factual "who, what, where, when, and why" information necessary to state plausible claims.

Failure to comply with these directives will result in a dismissal of this action.

## <u>CONCLUSION</u>

1. Within 21 days of the date of this Memorandum and Order, Plaintiff Felix Cuevas and Plaintiff Marilyne Carrion each shall pay the apportioned filing fee ($175.00 each), or each shall file a completed Motion for Leave to Proceed *in forma pauperis* accompanied by a certified prison account statement for the six-month period preceding the filing of the Complaint, failing which, this action shall be dismissed;

2. The Treasurer's Offices at SBCC and FSP are requested to provide Plaintiffs Felix Cuevas and Marilyne Carrion with their certified prison account statements for the six-month period preceding the filing of the Complaint, including the average six-months balance and average six-month deposits;

3. Plaintiff Felix Cuevas may not represent the interests of Plaintiff Marilyne Carrion *pro se*, and vice versa; each Plaintiff may prosecute only his or her own claims;

4. To the extent Plaintiffs' seek an Emergency Hearing on a Request for a Temporary Restraining Order (as contained in the Complaint), the request is <u>DENIED</u>; to the extent Plaintiffs seek an Order compelling production of their prison account statements, the request is <u>DENIED</u> notwithstanding the Court's request to the Treasurer's Offices to provide Plaintiffs with their inmate account statements;

5. Within 42 days of the date of this Memorandum and Order, Plaintiffs shall demonstrate good cause in writing why this action should not be dismissed for the reasons herein, and they shall file an Amended Complaint identifying plausible claims against each Defendant separately, and in accordance with Rule 8 of the Federal Rules of Civil Procedure; and

6. No summonses shall issue pending further Order of the Court.

SO ORDERED.

                                        <u>/s/ William G. Young</u>
                                        WILLIAM G. YOUNG
                                        UNITED STATES DISTRICT JUDGE

DATED: May 23, 2011